# The Dimes Savings Institution *versus* The Allentown Bank.

1. The defendants delivered to the plaintiffs (a bank) coin to be transmitted to defendants' agent, sold and the proceeds to be passed to the plaintiffs' credit in a city bank. The agent wrote to the plaintiffs that he had sold the coin and deposited the proceeds in the city bank to the credit of the plaintiffs, who thereupon credited the defendants and sent them the agent's letter on which they charged the plaintiffs. After some days it was discovered that the agent had not made the deposit and had failed. *Held*, that the plaintiffs were not bound by the entry of the credit and that the loss fell on the defendants.

2. The agent some days after he said he had made the deposit, deposited his check to the plaintiffs' credit in the city bank, which gave notice to the plaintiffs of a deposit of so much *money*. The check was not good. *Held*, neither the plaintiffs nor the city bank were bound by the credit.

3. The check was not money and the agent had no right to substitute his check for money.

4. Nothing but an actual and bonâ fide deposit of money to the plaintiffs' credit could charge them.

5. The defendants were responsible for the acts of their agent, as if *they* had deposited the worthless check.

6. Making numerous assignments of error criticised.

March 23d 1870. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Lehigh county :* No. 79, to January Term 1870.

This was an action of assumpsit by The Allentown Bank against The Dimes Savings Institution, commenced August 3d 1861. The suit was for a balance of $524.64, an amount alleged to be overdrawn by the defendants in their account with the plaintiffs December 10th 1860.

The defendants alleged that they should have been credited with the proceeds of $487 in coin, delivered on that day to the plaintiffs.

The plaintiffs gave evidence that before that day Charles S. Bush, the cashier of the defendants, upon his inquiry as to where he could sell specie, had received from another cashier the name of Cronise & Co., who were specie and bullion dealers in Philadelphia.

Also, by W. J. Hoxworth, their teller, that on the 10th of December Mr. Bush delivered to him a bag of coin, tied up, sealed and labelled with the name "·Cronise & Co.," their place of business and amount marked on it; he asked no credit, memorandum or receipt, but said, "Mr. Cooper (the cashier) knows how to dispose of it." It was put into the bank vault and sent to Philadelphia by express the next day. This receipt was taken from the express agent :—

" Received from the Allentown Bank one bag of specie, marked

[Dimes Savings Institution *v.* Allentown Bank.]

Cronise & Co., 40 S. 3d Street, Philadelphia, Pa., Four Hundred and Eighty-seven Dollars. To be forwarded to its destination."

The coin was not credited on the bank-books, nor entered in the pass-book.

Cooper testified, that his attention had been brought to the bag of coin by the teller, who said Bush had told him, he, witness would know what to do with it; witness wrote to Cronise & Co. by mail; the plaintiffs never did any business with Cronise & Co. On the 6th of December, at the defendants' place of business, Bush, in conversation with witness, recognised the fact that the defendants had overdrawn their account, and said it would be made good in a few days; that they had some old coin to sell, and that they would send it to Cronise & Co.; witness said plaintiffs had an arrangement with the express company for carrying packages of money, and suggested that defendants might send the coin through the plaintiffs; that the proceeds might be deposited to plaintiffs' credit "below," and defendants get credit with plaintiffs; Bush assented, and witness told him to pack the coin, direct it, hand it to plaintiffs, and they would send it by express; $492.72, the proceeds of the coin, was put to defendants' credit, on plaintiffs' books, December 13th 1860.

The plaintiffs gave in evidence the following papers, produced by defendants on call:—

Letter, dated December 12th 1860.

"Cash. Allentown Bank.

"Dear Sir: We have received your favor of 11 with enclosure as stated to your credit with Manf. & Mchs. Bk.
Specie      $493.22<br>Yours     CRONISE & Co."

Statement by Cronise & Co., of sales of the specie, footing up $493.22. At the bottom of this statement there was in Cooper's writing,—

"Dimes Savings Bank. Your credit, . $493.22
Less Express, . . . . . 50
Dec. 13 1860. ——— $492.72"

Cooper testified that he received these papers December 13th 1860, and after making the note at the bottom, sent them immediately to Bush, and gave credit to the defendants on the plaintiff's books. Witness testified that his recollection was "distinct and clear, so far as he gave it."

M. W. Woodward, cashier of Manufacturers' and Mechanics' Bank, testified that Cronise & Co. made no deposit in that bank December 12th 1860. The plaintiffs here rested.

The defendants then gave in evidence the following letter, produced by plaintiffs on call:—

[Dimes Savings Institution *v.* Allentown Bank.]

"Manufacturers' and Mechanics' Bank,
Philadelphia, December 22d 1860.

" C. W. Cooper, Cashier :

"Dear Sir—Cronise & Co. have deposited to your credit
$493.22.                    M. W. WOODWARD, Cashier,"
and rested.

The plaintiffs in rebuttal recalled Woodward, who testified that
the deposit of December 22d was a check of Cronise & Co. on
the Farmers' and Mechanics' Bank, which was not paid, and had
been protested; that the credit on their books was "Allentown
Bank, $493.22." All checks are entered, whether paid or not;
if not paid, are returned to the party credited. The plaintiffs
rested.

The defendants called Woodward, who testified : In December
1860, the notes of country banks were coming in rapidly for
redemption.

Charles S. Bush testified : " I was cashier of defendants in
December 1860; we commenced business on the 1st November
preceding; I went to the Allentown Bank to get the direction of
Cronise & Co.; Mr. Dillinger (an officer of the bank) gave me a
circular price-list of that firm containing quotations of the value
of old coin with their address printed on; I mentioned to Mr.
Dillinger that we had old coin to send to Philadelphia, to sell; a
few days later, being again at the Allentown Bank, Mr. Cooper,
cashier, proposed sending it, as it would be less expense; I con-
sented to that; he said, put it in a bag and mark the direction on
it; I took the bag to the Allentown Bank December 10th 1860,
handed it to Mr. Hoxworth, the teller, saying, 'Mr. Cooper knows
about it;' three days after this I received Cronise & Co.'s state-
ment of the proceeds of coin from Mr. Cooper through the post-
office, with a pencil-note at bottom advising credit; had no further
conversation with any officer of plaintiff about this coin, to my
recollection; nothing that I recollect was said about the M. & M.
Bank; nothing was said about any other bank in Philadelphia;
nothing was said as to what was to be done with the proceeds of
the coin in Philadelphia; nothing was said about the Allentown
Bank getting credit in Philadelphia; I did not give the Allen-
town Bank authority to intrust the coin with Cronise & Co.; we
had an arrangement with the Allentown Bank by which we had a
right to overdraw our account not exceeding $5000; and in return
we were to give them our specie funds and specie-paying bank-
notes and other exchange; Dillinger mentioned to me, when I was
at their bank, that Cooper was in Philadelphia, that their notes
were running in fast; said they were hard pressed for exchange;
the defendants had no account with any bank in Philadelphia; I
have no recollection of meeting Mr. Cooper at our banking-room
December 6th 1860; I have heard his testimony; I do not recol-

lect having had such a conversation at our bank or elsewhere.; it was not my habit of being at our bank in the evening; the Savings Bank was closed in the evening."

On cross-examination, witness said : * * * "I had made up my mind to send it to Cronise & Co. before Cooper told me to put their address on it; I charged the Allentown Bank with it after receiving the Cronise & Co. statement with Cooper's note of credit enclosed through the post-office; when I took it there I knew what was to be done with it; Mr. Cooper also knew what was to be done with it; he knew the coin was to be sold by us to Cronise & Co., and proposed to send it; nothing was said about what was to be done with the proceeds of the sale; I knew or expected what would be done with the proceeds, because we had overdrawn our account with plaintiff; when I received the detailed statement from Mr. Cooper I did not make any objection to the disposition of the proceeds."

On re-examination he said : "Before and up to the time of depositing the bag in the Allentown Bank I did not know what the Allentown Bank intended to do with the proceeds. Prior to my putting the bag in bank or at the time, nothing was said about plaintiffs writing to Cronise & Co.; I resigned as cashier in the spring of 1864. I knew it was to go to Cronise & Co., and that we were to have credit for it at the Allentown Bank after it was sold."

They gave evidence also that Cronise failed, December 22d 1860; that they transacted business till 2 o'clock that day, kept their deposits in the Farmers' and Mechanics' Bank. Also the following letters :—

"Allentown Bank,
"Allentown, Pa., Dec. 10th 1860.

"Messrs. Cronise & Co.:

"Per express to-morrow $487 coin. Allow best rates; report proceeds, and deposit the same to our credit with the Manufacturers' and Mechanics' Bank, Philadelphia.　　Yours,

"CHAS. W. COOPER, Cashier."

"Allentown Bank,
"Allentown, Pa., Dec. 29th 1860.

"M. W. Woodward, Esq., Cashier.

"Dear Sir: Yours of the 27th and 28th with enclosures are received. The Dimes Savings Bank objects to paying Cronise & Co.　　Very respectfully, yours, &c.,

"CHAS. W. COOPER, Cashier."

There was much additional evidence on both sides, including correspondence between the plaintiffs and Manufacturers' and Mechanics' Bank after the transaction, in which no notice had been taken of the fact that there had been no deposit.

[Dimes Savings Institution *v.* Allentown Bank.]

.. The plaintiffs and defendants submitted points which were categorically answered by the court, but are substantially answered in the charge in which Longaker, P. J., said :—

* * "Construing the opinion of the Supreme Court, delivered by Agnew, J., on a hearing of this case on appeal to that court, we say to you, that under the law controlling this case, the question of negligence by the plaintiff, or the liability of the Manufacturers' and Mechanics' Bank to account to the plaintiff, does not arise. It is a question of agency as regards Cronise & Co.

"This agency will be determined by finding whether Cronise & Co. were the agents of the Dimes Savings Bank for the purchase of the coin, and to account for its proceeds? If they were not, then they must have been the agents of the Allentown Bank.

"This litigation arises from the fact that Cronise & Co. failed to account for the proceeds of the coin purchased by them. The loss resulting from their bad faith and fraud must be visited upon the party who employed them, and who intrusted to them the disposition of the proceeds of the sale of the coin.

"In inquiring as to the scope of this agency, it will be perceived, that two acts to be done were intrusted to Cronise & Co. : the purchase of the coin, and the placing of the proceeds thereof in the Manufacturers' and Mechanics' Bank to the credit of the Allentown Bank. Were they then the agents of the Dimes Savings Bank for both or either of these purposes? If only for the first, the purchase, did the loss arise from that agency? or has the whole loss been occasioned by a failure to deposit the proceeds in the Manufacturers' and Mechanics' Bank?

"It is alleged by the plaintiff that Cronise & Co. were the agents of the Dimes Savings Bank for both purchase and subsequent deposit. As this is a fact asserted affirmatively by the plaintiff, it must be made to appear by proof stronger than that of the defendants that this allegation of the plaintiff is true. Can you then find this fact in favor of the plaintiff? If not, were Cronise & Co. the agents of the Allentown Bank?

"The plaintiff alleges that the coin was sent by them at the request and by the authority of the Dimes Savings Bank, to be sold to Cronise & Co. and the proceeds of sale to be deposited by them—Cronise & Co.—as the agents of the defendant, and that the plaintiff was to acquire no property in the proceeds of the coin until the same should be deposited with the Manufacturers' and Mechanics' Bank. Is this allegation sustained by the weight of the testimony? It is a fact for your finding."

The judge referred to the evidence and proceeded :—

"These facts, in a general way, present the most important points of the testimony as regards the history of the sale of the coin, and the subsequent disposition of the proceeds thereof, and its consequent loss. There then was no deposit made December

12th 1860, as was supposed from the statements contained in the letter of Cronise & Co. under that date; or in other words, did the plaintiff and defendant understand this letter to mean that such a deposit had been made, and acting under it make the proper entries of credit and debit in their books? These entries, if so made, would be a mutual mistake, caused by the bad faith or fraud of Cronise & Co. Whose agent then were Cronise & Co. when this fraud was committed? The solution of this important question brings you to a careful consideration of the testimony bearing upon the question of agency.

"What light does the testimony of Mr. Hoxworth afford you? What weight will you attach to the fact that the coin was counted, sealed and addressed when delivered at the bank of the plaintiff, with the direction from Mr. Bush, that Mr. Cooper will know what to do with it? No credit was then given and none asked. You will also ask yourselves what bearing, if any, has the fact that Mr. Bush before the delivery of the coin made inquiry of Squire Saeger for coin brokers in Philadelphia, and that Cronise & Co. were recommended.

"You have next in its order, the testimony of Mr. Cooper, and amongst other things he says:" * * *

The judge stated Mr. Cooper's testimony.

"If you believe this testimony and you further find that it has not been neutralized or negatived by testimony equally as strong, does it satisfy you of itself, and as weighed with the other testimony, that the agreement between Mr. Bush and Mr. Cooper was, that the coin and its proceeds should remain the property of the Dimes Savings Bank until it should be deposited in some Philadelphia bank to the credit of the Allentown Bank, and that when that credit was thus given, then the defendant was to have a credit for it with the Allentown Bank? If you are so satisfied, then the plaintiff will be entitled to recover." * * *

"Is this testimony reliable? Has Mr. Cooper forgotten? Is it consistent with the transactions, and corroborated by the other testimony? and does it aid you in determining the scope of the agency of Cronise & Co., as regards the purchase of the coin, and the disposition of the proceeds to be made by them.

"While bearing upon this you have the testimony of the defendant and especially the testimony of Mr. Bush, which must be considered by you."

Here Mr. Bush's testimony was read.

* * * "While in many particulars the testimony of Mr. Cooper and Mr. Bush agrees, there are upon important points wide discrepancies. Both cannot be right, and where there is a conflict one must be wrong. It is your duty to reconcile their statements; if you cannot do that you must find who has the best recollection,

[Dimes Savings Institution *v.* Allentown Bank.]

and who is supported by corroborating circumstances and testimony.

"You will observe that Mr. Bush says he has no recollection of this conversation, while Mr. Cooper swears he has a recollection of it. The testimony of Mr. Cooper is positive, and if you believe him, it is stronger than the negative testimony of Mr. Bush. Could then this conversation have taken place and be now forgotten by Mr. Bush? If not forgotten—it could not have taken place. Is he as likely to recollect it as Mr. Cooper? You have had both witnesses before you, and you may judge from their manner, their appearance, and their relative ages, who is likely to be right under the surroundings of this case.

"Where a witness swears positively to a fact as being within his recollection, and you reject his testimony, by so doing you must conclude that he is unworthy of belief. In other words, if you do not conclude that Mr. Cooper has also forgotten by the lapse of time as to what was said, to reject his testimony will be equivalent to find that he has sworn falsely. No charge of perjury has been made against him, nor is his credibility attacked by the direct testimony of witnesses that he is unworthy of belief. Is he mistaken? He swears he has a recollection of what he has testified to.

"If then you give full credit to his testimony, considering at the same time the surrounding circumstances of the case, and then contrasting all the testimony of the defendant, and other circumstances in his favor, does it satisfy you that Cronise & Co. were the chosen agents of the defendant to purchase the coin, and also to be intrusted with the proceeds thereof to be deposited with the Manufacturers' and Mechanics' Bank, or some other Philadelphia bank, and that the plaintiff acquired no interest in, or right to the proceeds until the deposit was so made? If you are so satisfied, then the plaintiff will be entitled to your verdict. Or do you find that the plaintiff was not only an agent of the defendant for the transmission of the coin, but also did assume the risk of the appropriation of the proceeds, or that he assumed the control of the proceeds without the authority of the defendant? If you so find, the defendant will be entitled to your verdict. Or do you find that the plaintiff acquired the absolute right to the coin as soon as sold, and that Cronise & Co. were the chosen agents of the Allentown Bank to make the deposit with the Manufacturers' and Mechanics' Bank? If you do, your verdict will be for the defendant."

The verdict was for the plaintiffs for $751.56.

The defendants took a writ of error, and in twenty-six specifications assigned the charge and the answers to the points, for error.

*J. H. Oliver* and *J. D. Stiles*, for plaintiffs in error.—The

[Dimes Savings Institution *v.* Allentown Bank.]

court so commented on and compared the testimony of Cooper and Bush as to mislead the jury; this was error: Lackawanna Railroad *v.* Chenewith, 2 P. F. Smith 382; Heilbruner *v.* Wayte, 1 Id. 259; Parker *v.* Donaldson, 6 W. & S. 132; Keeler *v.* Vantuyle, 6 Barr 250. The plaintiffs could not relieve themselves of the credit by proof of fraud or mutual mistake: Vantries *v.* Richey, 8 W. & S. 87; Levy *v.* U. S. Bank, 4 Dall. 236; Wetherill *v.* Bank, 1 Miles 399. There was laches in the plaintiffs in not making inquiry between the 13th and 22d of December, or giving notice and acting so as to prevent the consummation of the fraud; the liability is therefore on them: Brown *v.* Arrott, 6 W. & S. 402; Wingate *v.* Bank, 10 Barr 104; Harvey *v.* Turner, 4 Rawle 229; Devall *v.* Burbridge, 4 W. & S. 305; Clark *v.* Bank of Wheeling, 5 Harris 322. The credit given to plaintiffs and by them to defendants was payment: Bayard *v.* Shunk, 1 W. & S. 92; Irvine *v.* Hanlin, 10 S. & R. 219; 1 Pars. on Cont. 76, 77, 218, 220; Byles on Bills 161, 267; Grant on Banking 97, 293.

*S. A. Bridges* and *R. E. Wright,* for defendants in error, cited Mechanics' Bank *v.* Earp, 4 Rawle 384.

The opinion of the court was delivered, May 5th 1870, by

AGNEW, J.—We have in this case twenty-six errors assigned to a single charge of ordinary length, which is as much as to say the judge did not open his mouth unless to commit an error. This skill at multiplication is accomplished by dividing the charge into short paragraphs and assigning error to each. The injustice of thus manipulating a charge by piecemeal is obvious; while a still more serious injury is done to the cause by indiscriminate allegations of error and useless discussion. They distract our minds by diverting them to consider matters of no moment, and weaken the strong points, if any, by heaping upon them those that are feeble. Upon a writ of error it is much better to consider well the positions which seem to be fairly tenable, and to present them alone. Then the argument spends its concentrated force upon that which commands consideration, and the attention of the judges is not diverted to that which is immaterial. In this way real error is apt to be detected; while in the other, the mind, wearied by unimportant exceptions and inconclusive discussion, is more likely to overlook material errors. We commend these remarks to those who practice before us.

In the present case, after a careful examination of the charge of the learned judge below, as a whole, we can say confidently there were a very few questions in the case, and they were presented fairly. In saying this we dispose of nearly all of the assignments of error. There was one primary and leading ques-

tion of fact which, found by the jury, solved the case. Were Cronise & Co. the agents of the plaintiffs or of the defendants in converting the coin sent to them and depositing the proceeds in bank? This question was fairly submitted to the jury. We do not discover that one-sidedness in presenting the facts, of which the plaintiffs in error complain. According to the charge returned to us, the judge read the whole of Mr. Bush's testimony to the jury. As to the material points of difference between him and Mr. Cooper, his testimony was negative in its true character, while that of Mr. Cooper was positive. This was a transaction of nearly nine years standing, and therefore depended on distinctness of memory. What Mr. Cooper stated he remembers positively and clearly; while all that can be said of Mr. Bush's statement is, that he does not remember the facts stated by Cooper, and yet it is possible they existed. The recollection of Cooper is sustained by the inherent probability of the thing itself. Bush had been making inquiries for a suitable broker to send coin to for conversion, and made inquiry of Cooper also. He took the coin, tied and sealed up in a bag, after business hours, labelled with the name and place of business of Cronise & Co., handed it over to the teller at the Allentown Bank, asking no credit, memorandum or receipt, and merely saying that Mr. Cooper knew what to do with it. The money was neither counted nor credited by the Allentown Bank, and not charged by Bush. The Allentown Bank needed funds to meet their circulation in the city of Philadelphia, and the Dimes Bank had overdrawn its account, while Mr. Bush himself admits that he expected (if he did not express it) the proceeds of the coin would be carried to the credit of the Dimes Bank in its account with the Allentown Bank. What difficulty was there, therefore, in believing the positive recollection of Mr. Cooper that he suggested to Bush that he might take advantage of Cooper's arrangement with the express company to send the coin to Cronise & Co., and that the proceeds might be deposited to the credit of the Allentown Bank in Philadelphia, and the Dimes Bank get credit in the Allentown Bank, and that Bush consented to this suggestion? With all these strong corroborating facts, we are unable to discover any unfairness on the part of the judge in presenting the testimony to the jury.

The fact being established that Cronise & Co. were the agents of the plaintiffs to convert the coin and make the deposit to the credit of the Allentown Bank in the Manufacturers' and Mechanics' Bank, the other questions are solved by it. The credit given by the Allentown Bank, on the 13th of December 1860, for the proceeds of the coin ($493.22) was founded on the letter of the defendants' own agent. The defendants themselves were misled by the same letter. The credit and charge were therefore

entered by each respectively, through a common mistake, whether that arose from a misconstruction of the terms of the letter, or a false statement by Cronise & Co. Whether Cronise & Co. meant by that letter that they had deposited the proceeds in the Manufacturers' and Mechanics' Bank, or that they would do so, is immaterial—it is clear they never did so, and this was bad faith and fraudulent conduct on their part. The judge was therefore justified in characterizing it as bad faith and fraud. It was their duty to deposit the proceeds of the coin on the next day, but they did not. When they professed to make the deposit, it was by their own check, when they knew they were insolvent, and not in money, as good faith required. They failed on the same day they drew the check, and whether they had funds in the Farmers' and Mechanics' Bank is not material, as they had violated their trust before and up to the day they failed. Their check was not money, and being the agents of the defendants who had sent them money in fact, they had no right to substitute their own check in place of the money. The Manufacturers' and Mechanics' Bank had no authority from the plaintiffs to receive the check; and no authority being given to deposit it, either by the plaintiffs or the defendants, the check was neither a payment nor a deposit, as against the plaintiffs. Cronise & Co. thus being the agents of the defendants, it is plain that nothing less than an actual and bonâ fide deposit of the money to the credit of the plaintiffs can charge them with the receipt of the proceeds of the coin. The reason is obvious—until such a deposit was made, the plaintiffs had no part in the transaction, and could be in nowise implicated in the affairs of Cronise & Co. with the Manufacturers' and Mechanics' Bank. If such a deposit were not made, it was the fault of the defendants, for it was the breach of duty of their own agent. The case is no better than if the defendants themselves had deposited a worthless check in place of money which they agreed to deposit to the credit of the plaintiffs. The plaintiffs having given no authority to the Manufacturers' and Mechanics' Bank to receive the check, were not bound, after the withdrawal of the credit, to abide the result of a litigation with the bank about the check. The simple fact was that no money was deposited to the credit of the plaintiffs, and they gave no credit on the faith of the check, and recognised it in no way. The credit they did give was really given nine days before, upon the false or misapprehended letter of the agent that the money had been deposited. But the fact of a deposit was untrue and the credit unfounded. Nor can the plaintiffs be implicated in the delay of these nine or ten days to inform the defendants that the correspondence of the Manufacturers' and Mechanics' Bank did not disclose the credit. Cronise & Co. being the agents of the defendants, the plaintiffs cannot be condemned because they relied on their information.

[Dimes Savings Institution *v.* Allentown Bank.]

During this short interval between the 13th and 22d of December there was nothing to excite suspicion, from the omission of the bank to notify them, to cause the plaintiffs to be very prompt, or to cast upon them a loss caused by the bad faith of the agent of the defendants. The failure of Cronise & Co. was unknown to them, and no good reason, till that became known, existed to cause a doubt of their good faith.

Upon the whole, we are not able to perceive any error in the charge, and the judgment is therefore affirmed.